Donahue, J.
Section 3812, General Code, as amended 107 Ohio Laws, 629, vests in municipal corporations power to levy and collect special assessments for any part of the cost and expense connected with or made for changing the channel of, or narrowing, widening, dredging, deepening or improving any stream or watercourse, which the council may declare to be conducive to the public health, convenience or welfare.
A like condition to the exercise of this power is found in Section 6443,-. General Code, authorizing the board of county commissioners to locate, construct, straighten, widen, alter, deepen, box, or' tile, a ditch, drain, or watercourse, and the subject is deemed of such importance that it is further provided in Section 6469, General Code, that an appeal may be taken from the final order or judgment of the county commissioners finding that such improvement will be conducive to the public health, convenience, or welfare.
This court held in the case of Reeves v. The Treasurer of Wood County et al., 8 Ohio St., 333, that a statute authorizing township trustees to establish, locate, or improve a watercourse, without requiring them to first determine that such improvement would be conducive to the public health, convenience, or welfare, was unconstitutional and void, for the reason that it placed no limit to official discretion, and the power thereby conferred could be exercised irrespective of the public welfare, without violation of any provisions of that act. A like conclusion was reached in the case of McQuillen v. Hatton, 42 Ohio St., 202. In the case of *236 The Chicago & Erie Rd. Co. v. Keith et al., 67 Ohio St., 279, Sections 3343, 3344, 3345 and 3346, Revised Statutes, relating to regulation of ditches along railroad rights of way, were held unconstitutional because they did not contemplate the exercise of such power for the protection of public health, convenience, or welfare, but solely to the advantage of private interests.
In the case of Edwards et al. v. Myers, 99 Ohio St., 96, Section 6889, General Code, was for the same reason declared to be unconstitutional.
If a statute is. unconstitutional because it contains no provision requiring that the public character of the improvement shall first be determined, before an improvement such as is here proposed to be made is ordered, it follows that this provision, necessary to the constitutionality of the act, is not merely directory, but a condition precedent to the power of public officers to cause such improvement to be made.
This question, however, seems to be fully settled in this state in the case of Miller et al. v. Graham, Treas., et al., 17 Ohio St., 1, in which it is held that a failure of the county commissioners to find that the ditch “is necessary, and that the same is demanded by, or will be conducive to, the public health, convenience, or welfare,” is fatal to the validity of the proceedings establishing the same.
The provision of Section 3816, General Code, requiring that plans, specifications, estimates, and profiles of the proposed improvement shall be on file in the office of the director of public service in *237 cities, and the clerk in villages, applies in terms to all improvements for which a municipal corporation is authorized by Section 3812, General Code, to levy and collect special assessments.
It is said by some authorities that the provisions of Section 3816, General Code, are not only for the benefit of those whose lands are to be taken, or who are to be assessed for the improvements, but also for the purpose of advising the city council of the full scope, purpose, and probable cost of the improvement, before declaring by resolution the public necessity thereof.
However that may be, this section expressly provides that these plans, specifications, estimates and profiles shall be open to the inspection of all persons interested. Certainly the notice required by Section 3818 to the owner of each piece of property to be assessed for the improvement would be purposeless if no means were provided for advising such interested parties of the nature, extent, purpose and probable cost of the same.
While issue is joined by the pleadings as to whether the council did or did not comply with the provisions of this section, there is absolutely no conflict in the evidence. It is true that Mr. Cehres, the former city engineer, testified that at the time the resolution of necessity was passed by the council there were on file in his office certain plans and specifications made by him upon order of the court of appeals of Summit county in the case of The Akron-Selle Co. v. The City of Akron; but it further appears from the evidence that his successor, Mr. Zeisloft, was unable to find any *238 further plans and specifications on file in that office when he succeeded Mr. Gehres a month later, except those introduced in evidence. There is, however, no claim that any specifications were on file with the director of public service. There is a suggestion, but no evidence, that the office of the city engineer was in the same room as the office of the director of public service. That of course is not important. These files were the files of the city engineer, and not the files of the director of public service, and whether these offices were in the same or separate rooms, or separate buildings, would not be important.
However, the evidence upon this subject becomes wholly unimportant in view of the stipulations made and entered into by counsel on the 18th day of October, 1918, on behalf of all the parties to this action. (Record 256-257.) In these stipulations it is expressly agreed that Mr. Zeisloft, who was then city engineer, was at the time, of the trial of this case engaged in making plans and specifications for this improvement through the land of the plaintiff and others in whose behalf and for whose benefit this action was brought. It is further admitted that the estimated cost of that part, of the proposed sewer or conduit in sections 7, 8, 9, 10 and 11 is a general estimate, based upon the plans and specifications which Mr. Zeisloft was then engaged in making, the estimate having been made without and in advance of the making of detailed drawings.
It was further admitted that the sewer or conduit in sections 2 and 3 were constructed ten feet *239 in diameter under plans and specifications prepared and completed by Mr. Zeisloft, city engineer, since appointment to that office, and that the plans he was then preparing for the construction of a sewer through the property of the plaintiff in error specified a sewer or conduit ninety inches in diameter, inside measurement.
An inspection of the plans and specifications prepared by Mr. Gehres, acting as commissioner appointed by the court in the case of The Akron-Selle Co. v. The City of Akron, and not as city engineer, shows that no sewer of this dimension was contemplated, but that its largest part was. to be only sixty inches inside diameter, and but forty inches through the property of the plaintiffs in error. If, therefore, the plans and specifications prepared by Mr. Gehres were actually on file in the office of the director of public service at the time this resolution of necessity was passed, then the city council must have found and declared by resolution that a forty-inch sewer was sufficient for the purpose, notwithstanding the estimate of the cost upon which the assessments are predicated is based upon the plans and specifications being prepared by. Mr. Zeisloft for a ninety-inch sewer.
This discrepancy between a plan, for a forty-inch and estimate for a ninety-inch sewer adds weight to the suggestion that plans and. specifications, estimates and profiles, are also intended for the advice of the city council, so that it may act intelligently at the time of the adoption of the resolution declaring the improvement necessary.
*240 But, wholly aside from these considerations, the admission of counsel contained in these written stipulations ends the inquiry as to whether the plans and specifications, estimates and profiles, were on file in the office of the director of public service at the time of the passage of this resolution; for, it being admitted that these plans and specifications were being prepared at the time of the trial, it naturally follows that they could not have been on file at the time required by Section 3816, General Code.
While Section 3911, General Code, provides that proceedings with respect to improvements shall be liberally construed, and merely formal objections shall be disregarded, yet it also provides that “the-proceedings shall be strictly construed in favor of the owner of the property assessed or injured, as to the limitations on assessment of private property, and compensation for damages sustained.”
Where the owner of property to be assessed for improvement delays the bringing of an action to enjoin the collection of the assessment until after the improvement is completed and the property benefited thereby, .naturally a court will disregard irregularities and defects in the proceedings of council in making the assessment, and will, as a rule, sustain an assessment to the extent of the benefit properly chargeable against plaintiff’s property had the assessment been legally made. (The City of Cincinnati v. Bickett et al., 26 Ohio St., 49.) But it is not the purpose or intent of Section 3911, General Code, to make valid an assessment which is void because it is levied without. authority of *241 law. Stephan, Treas., v. Daniels et al., 27 Ohio St., 527.
In this case, however, the plaintiff acted promptly, and brought this action to enjoin the assessment before the improvement was made, and before her property derived any benefit therefrom. Therefore there are no equities in favor of the city that would call for the application of a liberal construction of the proceedings of council, even though Section 3911, General Code, did not expressly provide that such proceedings must be strictly construed in favor of the owner of the property, assessed or injured, as to the limitation on assessment of private property and compensation for damages sustained.
In view of the admission on the part of the city of Akron (record 203) that all parties were dismissed out of the case of The Akron-Selle Co. v. City of Akron et al., except the plaintiff and the city of Akron, the orders and judgment of the court of appeals in that case cannot affect the rights of these plaintiffs, nor does the judgment, or any interlocutory decree in that case, determine any of the questions presented by the pleadings in this case. Therefore that part of the answer of the defendant which purports, to recite the orders and judgment entered in the Akron-Selle case must be wholly disregarded.
Upon the question of benefits and upon the question whether or not this part of Wolf Ledge Run is a natural watercourse there is a conflict, of evidence, and the general finding of the court of *242 appeals in favor of defendant upon all issues joined is conclusive upon these questions. However, it might be said in passing that all the evidence offered on the part of the city of Akron in relation to damages and benefits to plaintiff’s property was directed to a forty-inch sewer, notwithstanding it is admitted that it is the purpose and intent of the city to construct a ninety-inch sewer. While it may not be important in the disposition of this case, nevertheless, in view of all the testimony offered touching the amount of water discharged through this portion of Wolf Ledge Run, a ninety-inch sewer would seem to be largely in excess of the requirements for a surface-water sewer. Mr. Zeisloft testifies (record 236) that the plans and specifications he is preparing for the construction of this sewer are for a combined sanitary and surface-water sewer. Notwithstanding the claim of the city that it is not intended to use this for a sanitary sewer, there is no evidence in conflict with Mr. Zeisloft’s testimony and it is admitted in the written stipulation of October 18, 1918, that this sewer is to be constructed according to the plans and specifications in process of preparation by him. It is therefore apparent that Mr. Zeisloft has increased the size of this sewer beyond the actual necessities of a surface-water sewer, so that it may be used for both purposes.
It would seem unnecessary to say that the property of the plaintiff is not subject to any servitude to other lands in that vicinity — to permit the flow of sanitary sewage over or through the property. The full extent of its servitude is limited to the sur *243 face waters that naturally find their way upon plaintiff’s property. City of Mansfield v. Balliett, 65 Ohio St., 451.
If the city of Akron proposes to establish a sanitary sewer through the lands of the plaintiff, either independent of or in connection with a surface-water sewer, it must first acquire that right by purchase or appropriation proceedings.
It is insisted upon the part of the city that by reason of the obstruction of the course of this stream the flow is sluggish and backwaters become stagnant, creating a nuisance, dangerous to the health of the citizens, and. that for this reason it has authority to enter upon and abate this nuisance. The uncontradicted evidence, however, establishes the fact that this condition is caused through the failure of the city to keep the drains and conduits open through and under street intersections. Mr. Gehres does testify that it is not the fault of the city, but “that people would come in the middle of the night and dump garbage and refuse there, and that the city could not stand out there day and night and Sundays and watch for the debris and garbage in the culverts.”
That, however, is no answer to the claim of the plaintiff that it is the duty of the city to keep these drains open and free for the passage of water. Its failure to do this will not authorize the city to enter upon private property to abate the nuisance caused by its own neglect, but, on the contrary, the owner of property damaged thereby can maintain an action against the city for damages and for an order of court directing the city to abate the *244 nuisance. The City of Cincinnati v. Johnson, 76 Ohio St., 567, affirming Cincinnati v. Johnson, 18 O. C. D., 377.
If for reasons other than the failure of the city to keep the drains and conduits through and under street crossings free and open for the passage of water, an owner of private property permits waters to collect thereon and become stagnant and dangerous to the public health, the city has authority to order the nuisance abated, and upon the failure of the owner to comply with the order of the city council in that respect the city may enter upon the property and abate the nuisance and assess the cost thereof against the owner. Bliss et al. v. Kraus, 16 Ohio St., 54.
In this case the city has not ordered the owners of this property to abate any nuisance existing thereon, nor has it ordered and directed them to widen, deepen, or otherwise improve the natural depression or drainage course upon their premises so as to permit the unobstructed flow of waters thereon. On the contrary, it appears that this drainage course is all sufficient for the purposes of plaintiff’s property, were it not for the obstruction at street intersections. The admissions and uncontradicted evidence establish the fact that the object and purpose of this improvement is, not the mere improvement of a drain or watercourse for surface water, but it is the establishment of a city sewer of dimensions large enough to accommodate the flow both of surface water and sanitary sewage.
*245 As soon as this improvement is completed this natural depression, dráin, or watercourse through plaintiff’s land, will become a public sewer of the city of Akron, and it will be the duty of the city of Akron to keep it in' repair. There is quite a distinction between the right of a city to provide better drainage by deepening and widening and cleaning out a natural watercourse, and the establishment of a permanent combined surface and sanitary sewer upon private property.
A city cannot, under the guise of abating a nuisance caused by itself, enter upon private property for the purpose of constructing a public sewer thereon, for surface and sanitary sewage, without first acquiring the right to do so by purchase or appropriation.
The judgment of the court of appeals is reversed, and that of the common pleas court affirmed.

Judgment reversed.

Nichols, C. J., Jones, Matthias, Johnson, Wan am aker and Robinson, JJ., concur.